NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT JORDAN INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> LEXMARK CARPET MILLS, INC., d/b/a TARKETT HOSPITALITY, <br><br> Defendant. | Civil Action No. 22-6551 (RK) (DEA) <br><br> **MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Defendant Lexmark Carpet Mills, Inc., d/b/a Tarkett Hospitality's ("Lexmark" or "Defendant") Motion to Dismiss and Transfer, (ECF No. 13), Plaintiff Scott Jordan International, Inc.'s ("SJI" or "Plaintiff") Complaint, (ECF No.1). Plaintiff filed this action on November 10, 2022, seeking monetary damages from Lexmark arising out of the termination of the parties' long-standing business relationship. Plaintiff opposed, filing a Motion to Dismiss and Transfer, (ECF No. 17), and Defendant replied, (ECF No. 18). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part, and Defendant's Motion to Transfer the surviving claims is **DENIED**.

I.    **BACKGROUND**

The following facts are derived from Plaintiff's Complaint and the exhibit filed in support thereof. (Comp., ECF No. 1.)[1] For approximately twenty (20) years, SJI served as a sales representative and dealer for Defendant and its products across the Northeast and Mid-Atlantic United States — in New Jersey, New York, eastern Pennsylvania, Delaware, Maryland, Virginia and Washington, D.C. (*Id.* ¶¶ 10–14.) In this role, Plaintiff sold Lexmark products, including flooring and carpeting, to various customers, including Choice Hotels and Comfort Inns. (*Id.* ¶¶ 26–30.) Defendant is a hospitality company incorporated in Georgia with operations throughout the United States. (*Id.* at ¶¶ 8,9; *see also id.*, Ex. A.)

The parties never entered into a written contract; over the years, Plaintiff and Defendant operated pursuant to "long-standing agreements and understandings." (*Id.* ¶ 19.) These included: (1) "preferred pricing when purchasing as a customer/dealer;" (2) the "right to be paid as a sales representative/agent on the work done landing a program [*sic*] for the duration of the program;" and (3) the "right to be paid as a sales representative/agent for projects registered during SJI's tenure as an agent regardless of when the order is received and shipped." (*Id.*) Further, Plaintiff alleges it reached an agreement with Defendant in the first half of 2018 where "Lexmark would pay [Plaintiff] commissions, as usual, for all specified programs and projects put in place by [Plaintiff] on behalf of Lexmark for the duration of such programs/projects, regardless of when the order is placed or the product is shipped." (*Id.*, Ex. A.)

In its role as sales representative and dealer, Plaintiff alleges it was entitled to earn a commission when Lexmark received orders from Plaintiff's assigned customers or in its territories. (*Id.* ¶ 34.) Plaintiff worked on two types of projects: "custom projects . . . and running line

---

[1] Plaintiff attaches the February 24, 2021 declaration of Samuel J. Burger, a former Lexmark employee, to its Complaint. (*See* Comp., Ex. A.)

2

projects." (*Id.* ¶¶ 33.) Lexmark's commission policy paid the "specifier (*sic*) (in these instances, SJI)" 70% for both types of projects, "for the duration of the project, regardless of when the order [was] placed." (*Id.* ¶¶ 31–32.)

Around the time of the 2018 agreement, Lexmark reduced the number of territories Plaintiff covered, except for certain customers, including Choice Hotels. (*Id.* ¶ 23.) Subsequently, on January 6, 2021, Lexmark terminated the relationship with Plaintiff effective March 7, 2021. (*Id.* ¶ 24.) Prior to this termination, Lexmark asked Plaintiff to sign a written "Sales Representative Agreement," but Plaintiff refused because the agreement would "alter the long-standing agreements and understanding of the parties." (*Id.* ¶ 25.) Thereafter, Plaintiff filed the instant Complaint against Lexmark alleging wrongful termination (Count I); breach of contract (Count II); breach of the implied covenant of good faith and fair dealing (Count III); wrongful denial and dishonor of agreement (Count IV); promissory and/or equitable estoppel (Count V); unjust enrichment (Count VI); fraudulent misrepresentation (Count VII); and negligent misrepresentation (Count VIII).[2] (*Id.* ¶¶ 42–69.) The Complaint sought compensatory, consequential and punitive damages. (*Id.*)

On December 19, 2022, Defendant moved to dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, to transfer the case to the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a).[3] (Mot. to Dismiss, ECF No. 13.) On January 23,

---

[2] This is mistakenly referred to as the second "Seventh Count" in the Complaint.

[3] Defendant also asks the Court to require Plaintiff to re-plead its Complaint under Fed. R. Civ. P 10(b). The Court declines Defendant's invitation. As an initial matter, "[n]othing in the federal rules specifically authorizes a motion to correct a departure from the paragraphing requirement in Rule 10(b)." Requirement of Separate Paragraphs, 5A Fed. Prac. & Proc. Civ. § 1322 (4th ed.). Here, the Court finds the requirements of Fed. R. Civ. P. 10(b) met — the Complaint contains numbered paragraphs, and each claim is stated in a separate count or defense.

2023, Plaintiff opposed the Motion to Dismiss and Transfer, (Pl.'s Opp., ECF No. 17), and Defendant replied on January 30, 2023, (Def.'s Reply, ECF No. 18).

## II.  LEGAL STANDARD

### A.  MOTION TO DISMISS UNDER RULE 12(B)(6)

Under Federal Rule of Civil Procedure 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal pursuant to this rule, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A Court must only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, "[a] pleading that offers labels and conclusions or a formulistic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). "Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth." *Valentine v. Unifund CCR, Inc.*, No. 20-5024,

2021 WL 912854, at *1 (D.N.J. Mar. 10, 2021) (citing *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011)).

### B. MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(A)

28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." A district court has "large discretion" to transfer a case under section 1404(a), though the decision involves "an individualized, fact-intensive consideration of all the relevant factors." *Ziemkiewicz v. R+L Carriers, Inc.*, No. 12-1923, 2013 WL 505798, at *2 (D.N.J. Feb. 8, 2013). The first step in deciding a motion to transfer requires the Court to "determine whether the alternate venue is one in which the case 'might have been brought.'" *Id.* (quoting 28 U.S.C. § 1404(a)); *Sondhi v. McPherson Oil Co.*, No. 20-13986, 2021 WL 5356182, at *4 (D.N.J. Nov. 17, 2021) (same). Venue in a civil action is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)–(3).

The second step of venue analysis, determining whether transfer is in the interest of justice and for the convenience of the parties and witnesses, requires courts to "evaluat[e] various private and public interests." *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 401 (3d Cir. 2017). The

5

private interests include "the plaintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses, and the location of books and records." *Smec Am. Corp v. Aggressive Hydraulics Leasing Co., Inc.*, No. 21-19465, 2022 WL 5102063, at *5 (D.N.J. Oct. 4, 2022) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). The public factors include "[t]he enforceability of the judgment, the relative administrative difficulty in the fora resulting from court congestion, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judgment with the applicable state law in diversity cases." *Id.* (quoting *Jumara*, 55 F.3d at 879–80).

### III. DISCUSSION

The Court begins its analysis by addressing two threshold points. *First*, neither party disputes that New Jersey law applies. Therefore, the Court will presume it controls here. *See Manley Toys, Ltd. v. Toys R Us, Inc.*, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case." (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999))). *Second*, Lexmark submits numerous exhibits in support of its Motion to Dismiss and Transfer, and Plaintiff attaches two declarations in its opposition briefing. As noted above, in reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in the Complaint and any exhibits, *see Phillips*, 515 F.3d at 234, but may not consider facts outside of the Complaint. *See Nash v. Akinbayo*, No. 18-677, 2019 WL 4393159, at *3 (D. Del. Sep. 13, 2019) ("Plaintiffs may not amend their complaint through opposition briefs, and new facts may not be considered by the Court on the instant motions to dismiss." (citing *Commonwealth of Pa.*

*ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)). As such, in ruling on Plaintiff's Motion to Dismiss, the Court will constrain its analysis to facts contained in Plaintiff's Complaint and accompanying exhibit.

A.   **MOTION TO DISMISS**

Defendant moves to dismiss Plaintiff's eight-count Complaint in its entirety under Rule 12(b)(6). Specifically, Defendant argues that Plaintiff fails to plead adequate facts to state a claim. For the reasons stated below, the Court will grant Defendant's Motion to Dismiss as to the claims for wrongful termination (Count I); breach of contract (Count II); breach of the implied covenant of good faith and fair dealing (Count III); wrongful denial and dishonor of agreement (Count IV); promissory and/or equitable estoppel (Count V); fraudulent misrepresentation (Count VII); and negligent misrepresentation (Count VIII), but deny as to unjust enrichment (Count VI).

1.   **Wrongful Termination**

Under New Jersey law, an employee may be terminated at will without cause. *Powell v. Advancing Opportunities*, No. 22-525, 2022 WL 16961387, at *3 (D.N.J. Nov. 16, 2022) (citing *Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505, 508–09 (N.J. 1980)). The state has a "strong presumption that all employment relationships are terminable at-will." *Saari v. Mitre Corp.*, No. 15-3295, 2017 WL 1197756, at *51 (D.N.J. Mar. 30, 2017) (citations and quotation marks omitted). To overcome this presumption and assert a claim for wrongful termination, a plaintiff must show that the employee's termination violated "a clear mandate of public policy." *Pierce*, 417 A.2d at 512. Here, Plaintiff has failed to show, at a minimum, that it was an employee of Defendant. As SJI admits, Plaintiff was "an independent sales representative" of Defendant. (Comp. ¶ 36.) Plaintiff fails to demonstrate the existence of an employment relationship, let alone

a violation of public policy. As such, the Court dismisses without prejudice Plaintiff's claim for wrongful termination.

### 2. Breach of Contract

The parties agree that to state a claim for breach of contract under New Jersey law, the plaintiff must prove: "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Sheet Metal Workers Int'l Ass'n Loc. Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985). However, the parties disagree whether Plaintiff properly alleged a claim for breach. Plaintiff admits that the parties did not have "a formal written" contract; instead the parties had "long-standing agreements and understanding, evidenced by numerous writings and an established course of dealing over approximately twenty (20) years." (Comp. ¶ 19.)

Parties may enter into either an express or implied contract. *See Chemo Iberica, S.A. v. Betachem, Inc.*, No. 13-4742, 2016 WL 865734, at *1 (D.N.J. Mar. 7, 2016). "[T]o state a claim for implied contract [a plaintiff] must show the same elements as are required for express contracts – offer, acceptance and consideration – except that proof of an implied contract is demonstrated by the 'conduct of the parties showing, in the light of surrounding circumstances, their tacit understanding.'" *Id.* (quoting *Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635, 644 (3d Cir. 1998)). "Acceptance of a contract must be absolute and unequivocal." *Hall v. Revolt Media & TV, LLC*, No. 17-2217, 2018 WL 3201795, at *2 (D.N.J. June 29, 2018). To sufficiently allege breach of contract, a plaintiff must "identify portions of the contract that were allegedly breached." *Id.* (citations and quotation marks omitted).

SJI fails to adequality plead the existence of the alleged contract here. SJI alleges the parties shared an understanding under "the long-standing agreements, understandings and commitments." (Comp. ¶ 23.) Indeed, SJI alleges that the parties in 2018 agreed that "Lexmark would pay Scott Jordan commissions, as usual, for all specified programs and registered projects put in place by Scott Jordan on behalf of Lexmark for the duration of such programs/projects, regardless of when the order is placed or product is shipped." (*Id.*, Ex. A.) Yet SJI does not demonstrate sufficient facts. SJI notes that it "secure[d] lucrative business for Lexmark," but fails to identify the specific business it orchestrated. Rather, SJI merely states vague references to "a list of programs . . . on which SJI is entitled to receive its specifier commission for the duration of the programs," (*id.* ¶ 30), as well as work with Choice Hotels, (*id.*, Ex. A).

In addition, SJI fails to explain the compensation it was entitled to receive. Instead, SJI mentions "the established split policy [of] 70%." (*Id.* ¶ 34.) Nowhere, however, does SJI explain how Lexmark would compensate SJI, specify the amount of money it is owed, or make clear when Defendant allegedly ceased commission payments. SJI further fails to specify the agreed upon duration of the contract. Plaintiff alleges Lexmark agreed to pay SJI "for the duration of such programs/projects", (*id.*, Ex. A), yet fails to plead any facts explaining the typical length of these contracts or if Lexmark intended to be bound for SJI's lifetime. *See Baer v. Chase*, 392 F.3d 609, 619 (3d Cir. 2004) (noting that "the duration of the contract is deemed an essential term and therefore any agreement must be sufficiently definitive to allow a court to determine the agreed upon length of the contractual relationship").

At the pleading stage, Plaintiff does not need to prove the existence of a contract. However, Plaintiff must allege with enough specificity the existence and breach of the contract at issue. *See Hall*, 2018 WL 3201795, at *2 (dismissing breach of contract claim where the Plaintiff "fail[ed]

to plausibly plead that the alleged agreement had sufficiently certain terms, such as the scope of Defendants' use of the song or the amount Plaintiff was to be paid [and] fail[ed] to adequately identify specific portions of the alleged contract which were breached"). Plaintiff may very well be able to allege sufficient facts to make out a breach of contract claim at the pleading stage. However, it has not done so here. Therefore, the Court dismisses without prejudice SJI's breach of contract claim.

### 3. Breach of Implied Covenant of Good Faith and Fair Dealing

In New Jersey, the implied covenant of good faith and fair dealing is a "component of every contract" that requires both parties to a contract act in "good faith . . . [by] adher[ing] to community standards of decency, fairness, or reasonableness." *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 722 (N.J. 2007) (citations and quotation marks omitted); *see Kenny v. Onward Search*, No. 15-456, 2015 WL 1799593, at *3 (D.N.J. Apr. 15, 2015) ("[A] contract[] include[s] an implied covenant that the parties to the contract will act in good faith."). This directive requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997) (citations and quotation marks omitted). However, "[w]here a plaintiff fails to adequately allege the existence of a contract, plaintiff cannot allege that defendant breached the covenant of good faith and fair dealing." *Hall*, 2018 WL 3201795, at *3. As discussed above, Plaintiff has failed to adequality plead a contract. Therefore, the Court dismisses without prejudice Count Three — breach of covenant of good faith and fair dealing.[4]

---

[4] Since the Court finds that there is not a valid contract, the Court declines to rule on Defendant's argument that Plaintiff failed to allege bad faith.

### 4. Wrongful Denial and Dishonor of Agreement

The Complaint asserts that "Lexmark has wrongfully sought to deny, disavow and dishonor its long-standing agreements and course of dealing with SJI." (Comp. ¶¶ 51–53.) However, the Court agrees with Defendant's argument that wrongful denial and dishonor of agreement are not valid claims in this case. *See Vineland 820 N. Main Rd., LLC v. United States Liab. Ins. Co.*, No. 17-2986, 2018 WL 4693965, at *9 (D.N.J. Sept. 29, 2018) ("Plaintiff cannot show that their [insurance] claim was either wrongfully denied or denied in bad faith."). Further, to the extent Plaintiff asserts that these are valid causes of action, the Court will dismiss without prejudice as duplicative of the breach of contract and breach of good faith and fair dealing claims above. *See Blake Gardens, LLC v. New Jersey*, 309 F. Supp. 3d 240, 248 (D.N.J. 2018) ("It is well-recognized that a court may dismiss a duplicative claim in a complaint." (citations omitted)).

### 5. Promissory/Equitable Estoppel[5]

To state a claim for promissory estoppel, a plaintiff must show: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Toll Bros. v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 944 A.2d 1, 19 (N.J. 2008). Of note, a "clear and definite promise is the 'sine qua non for [the] applicability of [promissory estoppel].'" *Zhejiang Rongyao Chem. Co. v. Pfizer Inc.*, No. 11-5744, 2012 WL 4442725, at *6 (D.N.J. Sept. 21, 2012) (alternations in original) (quoting *Malaker Corp. v. First Jersey Nat'l Bank*, 395 A.2d 222, 230 (N.J. Super. Ct. App. Div. 1998)).

---

[5] Plaintiff alleges both promissory and equitable estoppel in the Complaint. However, in its Motion to Dismiss Opposition, Plaintiff only recites the criteria for promissory estoppel. (*See* ECF No. 17 at 22.) Further, in New Jersey, "equitable estoppel is not recognized as an independent claim for relief." *See Gant v. Ragone*, No. 20-1727, 2020 WL 6797125, at *9 (D.N.J. Nov. 19, 2020). Therefore, the Court construes Count Five as a claim for promissory estoppel only.

Further, the plaintiff must show that the "promisee incurred a detriment due to that reliance when the promisor broke the promise." *Goldfarb v. Solimine*, 245 A.3d 570, 578 (N.J. 2021).

Here, Plaintiff fails to allege the specific promise, including "allegations regarding who communicated the alleged promise . . . [how] many years into the future, when and where it was made, or what the specific parameters of the promise were". *Pfizer*, 2012 WL 4442725 at *6. Plaintiff merely claims that in 2018, Lexmark agreed to pay Plaintiff "commissions . . . for all specified programs and registered projects put in place by Scott Jordan for the duration of such programs/projects, regardless of when the order is placed or product is shipped." (Comp., Ex. A.) However, Plaintiff fails to specify who made this promise on behalf to Lexmarkor the exact parameters of this agreement.[6] Therefore, the Court dismisses without prejudice Plaintiff's claim of promissory estoppel.

### 6. Unjust Enrichment

Count Six of the Complaint asserts a claim for unjust enrichment. "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Bava v. Hamilton Farm Golf Club*, No. 08-5473, 2009 WL 2778108, at *3 (D.N.J. Aug. 28, 2009) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)). Here, Plaintiff alleges that Lexmark agreed to pay Plaintiff "commissions . . . for all specified programs and registered projects put in place by Scott Jordan for the duration of such programs/projects, regardless of when the order is placed or product is shipped." (Comp., Ex. A.) In reliance on this, Plaintiff alleges it "secure[d] lucrative business" for Lexmark, including

---

[6] The Burger Declaration mentions that Mr. Burger "was directly involved with reaching an agreement and understanding" with Plaintiff. (Comp., Ex. A.) However, it otherwise does not provide concrete details on this alleged agreement.

with Comfort Inn. (*Id.* ¶ 26.) As such, Plaintiff alleges it "is entitled to receive its specifier commission for the duration of the programs." (*Id.* ¶ 31.) Plaintiff further alleges that Defendant's employees "publicly acknowledged and recognized" Plaintiff's contributions and successes, including Plaintiff's work "with Choice." (*Id.* ¶¶ 18–21.) Plaintiff alleges it secured key business for Defendant, thereby benefiting Defendant. Defendant "could not have expected . . . that [Plaintiff] would work for no compensation." *Betachem*, 2016 WL 865734, at *4. Therefore, the Court denies Defendant's motion to dismiss the unjust enrichment claim.

### 7. Fraudulent Misrepresentation

To state a claim for fraudulent misrepresentation, a Plaintiff must demonstrate: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Lee v. A to Z Trading LLC*, No. 12-4624, 2014 WL 7339195, at *2 (D.N.J. Dec. 23, 2014) (citations and quotation marks omitted). "Federal Rule of Civil Procedure 9(b) requires allegations of fraud to be stated with particularity." *Id.*; *see also Bava*, 2009 WL 2778108, at *2 (D.N.J. Aug. 28, 2009) (dismissing fraud claim where the complaint contained no "specifics regarding th[e] misrepresentation"); *Premier Pork L.L.C. v. Westin, Inc.*, No. 07-1661, 2008 WL 724352, at *10 (D.N.J. Mar. 17, 2008) (noting that Fed. R. Civ. P. 9(b) "requires plaintiffs to plead with particularity the facts supporting the elements of fraud").

Here, Plaintiff fails to satisfy the pleading requirements. Nowhere does Plaintiff allege that Defendant made a knowingly false material misrepresentation. Plaintiff alleges an agreement with Lexmark in the first half of 2018, but Plaintiff supplies no allegations that any statement by Lexmark was false or made with "intent to deceive." *Gennari v. Weichert Co. Realtors*, 691 A.2d

350, 365 (N.J. 1997). Therefore, the Court dismisses without prejudice Plaintiff's fraudulent misrepresentation claim.

### 8. Negligent Misrepresentation

A claim of negligent misrepresentation requires the plaintiff to "establish that (1) a false statement, (2) was negligently made, (3) plaintiff justifiably relied on that statement, and (4) suffered economic loss or injury because of the reliance." *Eberhart v. LG Elecs. USA, Inc.*, 188 F. Supp. 3d 401, 409 (D.N.J. 2016). Negligent misrepresentation claims are very similar to fraud fraudulent misrepresentation claims, though the former "does not require scienter as an element." *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1196 (N.J. 2000). "In order to determine whether any statements by defendants were negligently made, it is necessary to determine whether defendants owed plaintiff a duty to exercise reasonable care in communicating facts." *Singer v. Beach Trading Co.*, 876 A.2d 885, 891 (N.J. Super. Ct. App. Div. 2005) Here, Plaintiff failed to plead that Lexmark owed any duty to Plaintiff or that Lexmark made a false statement. Further, Plaintiff fails to demonstrate that Lexmark made any false statements to Plaintiff. Therefore, the Court dismisses without prejudice Plaintiff's negligent misrepresentation claim.

### B.  MOTION TO TRANSFER

Lexmark urges the Court to transfer this case to the Northern District of Ohio under 28 U.S.C. § 1404(a) should any of Plaintiff's claims survive dismissal. (Mot. to Dismiss at 12–16.) While neither party disputes that venue is proper in the District of New Jersey, Lexmark argues that "the balance of interests" and an alleged forum selection clause support transfer to Ohio. *Id.*

The initial inquiry in deciding whether transfer is appropriate under section 1404(a) is whether this action could have properly been brought in the proposed transferee court. *Sondhi*, 2021 WL 5356182, at *4. It is not clear whether venue is proper in the Northern District of Ohio.

Defendant's main argument in support of transfer concerns an alleged forum selection clause that specifies that "any disputes be litigated in the courts of Cuyahoga County, Ohio." (Mot. to Dismiss at 12; *see also* Mot. To Dismiss, Ex. E.) However, "[t]ransfer is not available . . . when a forum selection clause specifies a non-federal forum." *Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001). The alleged forum selection clause does not direct the parties to litigate in federal court, and the Court cannot transfer a case to a non-federal forum.[7]

Even if the Court could transfer the case to state court, it is not clear that the forum selection clause applies to the dispute here. Defendant proffers the forum selection clause that is embedded in the "General Terms and Conditions" governing "the sale of Products and Services" by Defendant. (*See* Mot. to Dismiss, Ex. F.) As Defendant explains, these terms and conditions were sent to, and allegedly agreed to, by Plaintiff in an "order acknowledgment form" sent to Plaintiff when Plaintiff placed in order from Defendant around July 2021. (*See id.* at 11; *see also id.*, Ex. E.) However, as Plaintiff points out, the order acknowledgement form was sent to Plaintiff "for product subsequently sold to Plaintiff as a customer only" over six months after Defendant terminated Plaintiff's services in January 2021. (*See* Pl.'s Opp. at 36.) Plaintiff's claims in this case arise from this 2021 decision to cut ties with Plaintiff. "To be enforceable, a forum selection clause must . . . govern the claims at issue." *CyGate Software & Consulting, LLC v. Shukla*, No. 06-5136, 2007 WL 9782942, at *3 (D.N.J. Jan. 5, 2007) (citing *Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1074–75 (3d Cir. 1997)). Defendant has not explained how a forum

---

[7] If a proper forum selection cause specifies a non-federal forum, "the district court would have no choice but to dismiss the action so it can be filed in the appropriate forum so long as dismissal would be in the interests of justice." *Salovaara*, 246 F.3d at 298. However, "where venue would be proper in the initial forum court, provided no forum selection clause covered the subject matter of the lawsuit, it is inappropriate to dismiss." *Id.*

selection clause that post-dated the relevant activities and alleged agreements in this case can control Plaintiff's claims in this case.

Aside from the forum selection clause, Defendant does not explain how the Northern District of Ohio is a proper venue. Turning to the factors under section 1391(b), Lexmark is not a resident of Ohio.[8] Further, section 1391(b)(2) provides that a case may be brought in a district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). This requires courts to consider "the location of those events or omissions giving rise to the claim." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 161 (3d Cir. 2012) (citations and quotation marks omitted). Defendant shows no connection, outside of the alleged forum selection clause, to Ohio. Defendant does not argue that Defendant or Plaintiff interacted in Ohio or had any connections to the state. On the other hand, Plaintiff alleges it is a New Jersey corporation with its principal place of business in New Jersey; it acted as a sales representative and dealer throughout the Northeast and Mid-Atlantic, including New Jersey; and Defendant sought Plaintiff's services based in part on its ties to New Jersey. (Comp. ¶ 10–14; ECF No. 17 at 30.) Lacking any evidence that venue is proper in the Northern District of Ohio, the Court denies Defendant's Motion to Transfer.[9]

---

[8] According to Plaintiff's Opposition to the Motion to Dismiss and accompanying exhibits, Lexmark is incorporated and has its principal place of business in Georgia. (*See* ECF No. 17-1 at 2.) Tarkett is a French company. (*See* ECF No. 17 at 31.)

[9] Because the Court concludes that venue is not proper in the Northern District of Ohio, it declines to turn to the second prong of the § 1404(a) analysis — whether transfer would be in the interest of justice and for the convenience of the parties and witnesses.

IV.   **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED** in part and **GRANTED** in part. All Counts of the Complaint except Count VI (Unjust Enrichment) are **DISMISSED** without prejudice. Defendant's Motion to Transfer is **DENIED**. Plaintiff has thirty days to file an amended complaint addressing the deficiencies noted herein. An appropriate Order will accompany this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: August 21, 2023

17